HAWKINS, Justice,
for the Court.
Jerry Leflore was convicted in the circuit court of the First Judicial District of Hinds County of the crime of armed robbery, and sentenced to serve 25 years in the Mississippi Department of Corrections with 15 years suspended, 10 years to serve, and to be placed on probation for 5 years.
Upon this appeal we address the sufficiency of the evidence, and whether or not a *676 mistrial was warranted because of the unwarranted presence of a jury bailiff in the jury room during deliberations.
FACTS
Robert Odeh, a native of Nigeria who had been in this country for approximately four years, was employed at the Fas-Gas Service Station at 2013 West Capitol. He was well acquainted with Leflore, an 18-year-old youth, having seen him on almost a daily basis. Leflore had worked at the station for two days in July, 1980.
Around 10 a.m. on Sunday, November 9, 1980, a man walked in the station, his face covered with a towel. He wore a T-shirt, white pants, and light blue casual shoes. He pulled a .22 caliber pistol on Odeh, pointed it in his face, and walked to the cash drawer and took approximately $60.00 in cash, leaving the silver. Nothing was spoken.
When he first came in, Odeh testified, “A guy who I felt, you know, I knew very well came in with his face covered up and I thought he was playing with me, you know, like he was making fun.”
Although his face was covered, from his complexion, mannerisms, and the way he walked, Odeh thought it was Leflore. The robber left the station from a side entrance and Odeh followed him approximately fifty yards from the store. The robber took the towel off his face, and Odeh got something of a side view of a part of the side of his face. This convinced him the robber was Leflore. The robber was walking in the direction of Leflore’s home.
Odeh returned to the store and called the police, who quickly arrived. Odeh then accompanied the officers to the Leflore residence where he was arrested. Odeh testified Leflore was wearing what appeared to be the same trousers and shoes, but a different colored T-shirt Odeh had remembered the robber wearing.
No money or weapon was found on Le-flore.
The conviction of Leflore was based entirely upon the testimony of Odeh.
Leflore testified his grandmother awoke him around 10 a.m. on that Sunday, gave him $5.00 to go to the store and get change. She wanted to give his younger brother and sisters Sunday School money. He went to a store on the corner of Capitol and Valley, owned and operated by Willie L. (Pop) Jones. The Jones store was located about one-and-a-half to two blocks from the service station. Leflore lived approximately three to four blocks from these places of business.
On his way to the store, Leflore was asked by a small boy to bring him something back from the store. According to Leflore, he got the money changed, and returned home. On his return, the child asked him why he had not brought him anything, and Leflore replied he had no money.
Within moments after Leflore got home, the police arrived and he was placed under arrest.
Leflore’s testimony was corroborated by his grandmother who testified she woke him around 9:30 to a quarter of ten and gave him $5.00 to go get change to give to his younger brother and sisters. Willie L. Jones also testified around the middle of that morning Leflore had indeed been to his store and got $5.00 changed, in his best judgment between 9 and 10 a.m. Henry Catchings, a long acquaintance of Leflore, saw him around 10 a.m. talking to a small boy about three blocks from the service station.
Each of these witnesses (excluding possibly Leflore) had testified at a preliminary hearing in December, 1980, and their testimony was substantially the same as during trial in June, 1981.
TRIAL PROCEEDINGS
While counsel were discussing the proposed instructions with the judge, defense counsel asked the court what Mr. Carlisle (a jury bailiff) was doing in the jury room. The court replied he was seeing if they had any messages they wanted sent out.
*677 Defense counsel then stated, “I’d like to enter an objection to that. Charlie’s got a way of making expressions sometimes. I wish he’d just ask from behind the door.”
The court sent for the bailiff, and a discussion was had between the judge and the bailiff. The substance of the conversation is not in the record, but just following the discussion, the record reveals:
By the court, “The jury is inquiring about the heat since the air conditioner is not working and wants to know if they can get a fan. We’ve got a fan up in the court reporter’s office in my office, if you’ll get that fan down here.”
Court and counsel then resumed discussion of the instructions. Following discussion about the instructions, the district attorney requested the court to state for the record that he had called Mr. Carlisle out, talked to him, and what he had determined. The record then reveals:
By the Court, I’ll state for the record that after defense counsel objected or inquired about the presence of the bailiff in the jury room, the Court then inquired of the bailiff his purpose of being in there and he stated that the Jury was complaining about the heat since the air conditioner has gone off and were inquiring about the possibility of obtaining a fan. And the bailiff has been instructed and is returning now with a fan.”
Mr. Lee (defense counsel), “I assume that — I don’t know if this is in the record or not, but I assumed that a mistrial would have been overruled, if I so make it, you would overrule — ”
The Court, “There’s been no motion made for a mistrial.”
Mr. Lee, “Well, let me, for the record make it, if I may.”
Defense counsel then moved for a mistrial, and that he had no knowledge of what was discussed in the jury room.
The Court responded, “Well, I think the record will reflect that the bailiffs were properly sworn at the beginning of the trial and I can state for the record, we do not have a jury waiting room; also state for the record that the temperature in here is past 80 and one of the duties of the bailiffs is to make sure or to make the jury as comfortable as possible under all circumstances.”
Nothing further was said during the trial proceedings about the matter.
LAW
I.
On the question of the sufficiency of the evidence, we need not repeat the holdings in our multitude of cases that where the evidence is conflicting, the verdict of the jury will not be disturbed. In examining the record, this case is uncomfortably close.[1]
Odeh’s testimony, as far as it went, has all the ring of truthfulness. We would have preferred the investigation of the officers developing some corroboration other than the clothes Leflore was wearing when arrested. No pistol or money were found on Leflore or on the premises. There is no record of a search being made of Leflore’s residence, or of fingerprints being taken of the cash drawer. These sources of evidence were available to the officers.
While perhaps not obligated to do so, further testimony of Leflore’s innocence should have been available to defense counsel. There were other possible witnesses. Perhaps counsel thought he produced all he needed.
As an appellate court, we cannot reverse on this conflicting testimony.
The jury saw and heard the witnesses, and their opportunity to evaluate is denied us, confined as we are to a record.
Moreover, it is the solemn duty of a district attorney to protect the innocent as well as prosecute the guilty.
Finally, and most important in our minds, is the experienced trial judge, who must *678 live with his court decision taking the liberty of a young man.
These considerations accord our utmost respect and deference.
II.
Was a mistrial warranted because the bailiff was in the jury room?
It is, of course, a misdemeanor for a bailiff to go into the jury room after the jury has retired. Miss.Code Ann. § 97-9-57 (1972) In this case, however, it is understandable. While the bailiff should have reported the Jury’s discomfort to the circuit judge and asked for instructions, he did, what appears to us, the natural thing. He walked into the room to see how warm it was. As far as this record goes, that is all he did. No harm of any kind resulted, except the embarrassment the bailiff caused the Court. Defense counsel never attempted to show that any kind of impropriety occurred in the jury room. Had there been any, evidence of it was clearly available, from the bailiff and members of the jury. See: Johnson v. State, 106 Miss. 94, 63 So. 338 (1913).
There is no merit in any other assignment of error.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, DAN M. LEE, PRATHER and ROBERTSON, JJ. concur.

. From the record, this is as close a case as the author of this opinion has encountered.